<u>NOT FOR PUBLICATION</u>                                                                                          (Doc. No. 5)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | |
|---|---|
| ANCHORTEX CORPORATION, | |
| Plaintiff, | Civil No. 16-2544 (RBK/JS) |
| v. | **OPINION** |
| CAPITOL SUPPLY, INC., et al., | |
| Defendant(s). | |

**KUGLER**, United State District Judge:

This matter comes before the Court on Plaintiff Anchortex Corporation's ("Plaintiff") Complaint against Defendants Capitol Supply, Inc. ("CSI") and Capitol Supply, LLC (collectively, "Defendants") asserting claims for breach of contract, breach of good faith and fair dealing, and estoppel. Currently before the Court is Defendants' Motion to Dismiss or Transfer Venue (Doc. No. 5) to the United States District Court for the Southern District of Florida pursuant to Federal Rule of Civil Procedure 12(b)(3), 28 U.S.C. § 1406(a), and 28 U.S.C. § 1404(a). For the following reasons, Defendants' Motion is **DENIED**.

**I.      FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff is a vendor of work clothing and equipment. Compl. ¶ 4. Plaintiff is incorporated and has a principal place of business of New Jersey. Pl.'s Opp'n Br. 4. Defendants are a supply company that supplies the government with a variety of office and operational products. Def.'s Br. 3–4. Defendant CSI is a corporation organized in Florida and with a principal place of

business in Florida. *Id.* Defendant Capitol Supply, LLC is a limited liability company that has members who are citizens of Florida. *Id.*

On July 20, 2015, CSI contacted Plaintiff regarding the possibility of purchasing blankets for a bid CSI was submitting to the U.S. Army. Compl. ¶ 4; Pl.'s Reply Br., Bender Decl. ¶ 3. Later that day, CSI sent a Contractor Teaming Agreement to Plaintiff, which an agent of Plaintiff executed in New Jersey and returned via email. Pl.'s Reply Br., Bender Decl. ¶ 5. The Agreement contained a choice of law provision for Florida state law. Pl.'s Reply Br., Bender Decl., Ex. 2.

In September 2015, CSI ordered 10,000 blankets for a price of $251,440. Compl. ¶ 5. Around that time, Plaintiff sent CSI a credit application to complete. *Id.* ¶ 6. The Application of Credit contained two pages, the second of which is a signature page that states, "I/We ('I') declare my/our willingness to abide by Anchortex Corporation's Terms and Conditions of Sale." Pl.'s Reply Br., Bender Decl., Ex. 7. The Terms and Conditions of Sale ("TCS") were not attached to the Application of Credit but were available on Anchortex's website. Pl.'s Reply Br. 5. The TCS contained a forum selection clause for the state and federal courts in Camden County, New Jersey. Pl.'s Reply Br., Bender Decl., Ex. 8. CSI completed and returned some portion of the Application of Credit to Plaintiff. Pl.'s Reply Br. 5. Plaintiff has a copy of the first page completed by CSI but states that it is not able to produce the second page, which is the signature page and contains the reference to the TCS which has the forum selection clause. *Id.*

Plaintiff allegedly agreed to deliver the blankets in three shipments. Compl. ¶ 8. On December 28, 2015, Plaintiff delivered the first shipment of 2,000 blankets and invoiced CSI. *Id.* ¶ 9. The blankets arrived on January 7, 2016. *Id.* ¶ 10. After delivery, CSI requested shipment of

the remaining 8,000 blankets. *Id.* ¶ 11. CSI sent Plaintiff deposits for the second and third shipments on January 13, 2016 and February 1, 2016. *Id.* ¶ 12–13.

On February 24, 2016, CSI notified Plaintiff that it was canceling the order for the remaining 8,000 blankets because the Army stated that they did not wash well in bulk. *Id.* ¶ 15; Pl.'s Reply Br. 5. Plaintiff alleges that this cancellation was a breach of contract and that CSI owed Plaintiff $145,343 in payment. Compl. ¶ 16. On March 8, 2016, Plaintiff filed a Complaint in the Superior Court of New Jersey, Camden County alleging breach of contract, breach of good faith and fair dealing, and estoppel. *Id.* ¶ 25–33. Plaintiff demands compensatory damages, interest, attorney's fees, and costs. *Id.* Defendants were served with the Complaint on April 6, 2016 and removed the case to the U.S. District Court for the District of New Jersey on May 5, 2015, invoking federal jurisdiction under 28 U.S.C. § 1441(b) (Doc. No. 1). Defendants then filed the present Motion to Dismiss or Transfer Venue on May 12, 2016 (Doc. No. 5).

## II.     MOTION TO DISMISS

Defendants move to dismiss the case for improper venue under Federal Rule of Civil Procedure 12(b)(3). Plaintiff argues that the Court should enforce the forum selection clause in the TCS available on Plaintiff's website, which selects the state and federal courts in Camden County, New Jersey, and Defendants argue that venue is improper in New Jersey under 28 U.S.C. § 1406(a). The Court addresses each argument in turn.

### A.     Forum Selection Clause

Plaintiff and Defendants disagree over whether the forum selection clause in the TCS referenced in Plaintiff's Application for Credit binds the parties. To determine whether a contract is valid, the court must first determine the law that applies. Normally, federal courts "apply the choice of law rules of the forum state . . . in order to determine what substantive law governs a

diversity action."[1] *Gibbs ex rel. Gibbs v. Carnival Cruise Lines*, 314 F.3d 125, 131 (3d Cir. 2002). New Jersey employs a two-step test to determine which substantive law governs the interpretation of a contract. First, the court examines whether "whether there is a conflict between the laws of the various jurisdictions that have an interest in the matter." *P.V. ex rel. T.V. v. Camp Jaycee*, 962 A.2d 453, 470 (N.J. 2008). If so, the court "identif[ies] the governmental policies underlying the law of each state" and determines "how those policies [were] affected by each state's contacts to the litigation and to the parties." *Id.* (quoting *Veazey v. Doremus*, 510 A.2d 1187, 1189 (N.J. 1986)). If no actual conflict exists, "the choice-of-law question is inconsequential, and the forum state applies its own law to resolve the disputed issue." *Rowe v. Hoffman-La Roche, Inc.*, 917 A.2d 767, 771 (N.J. 2007). Here, the contract involves the sale of goods totaling more than $500, and the parties dispute whether the parties agreed to be bound by the TCS. Both New Jersey and Florida have adopted Article 2 of the Uniform Commercial Code — Sales. Further, the provisions on contract formation and the Statute of Frauds are the same between both state codes. *See, e.g.*, N.J. Stat. Ann. §§ 12A:2–206; 12A:2–201; Fla. Stat. Ann. §§ 672.206; 672.201. Therefore, there is no actual conflict of laws, and the Court will reference and apply New Jersey law in this case.

      Plaintiff argues that Defendants agreed to the TCS and the forum selection clause therein that selects the state and federal courts in Camden County, New Jersey. Under the Statute of Frauds, in order for a contract or a contract modification to be enforceable for a sale of goods

---

[1] The Third Circuit considers the enforceability of a forum selection clause to be a procedural question. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877 (3d Cir. 1995). Thus, it applies federal law in diversity cases to decide whether a forum selection clause is enforceable. In this case, the issue is not whether the forum selection clause itself is enforceable but whether the contract containing the provision is even valid. That question is one of contract interpretation, and the Court thus applies the choice of law rules of the forum state to determine what state's substantive law governs, rather than apply federal law.

totaling more than $500, the contract must: (1) be in writing, (2) indicate a contract for sale between the parties, and (3) be signed by the party against whom enforcement is sought. N.J. Stat. Ann. §§ 12A:2–201, 12A:2–209. A mark or symbol, including a typewritten name, suffices to fulfill the signature requirement if "used with the declared or apparent intent to authenticate the memorandum." *Flight Sys., Inc. v. Elec. Data Sys. Corp.*, 112 F.3d 124, 129 (3d Cir. 1997).

In this case, Plaintiff has failed to show that Defendants signed the TCS or any agreement referencing the TCS. It argues that Defendants completed and returned the Application for Credit, which normally includes a second, signature page that references the TCS. However, Plaintiff is only able to show that CSI completed the first page of the credit application and furnishes no proof that CSI signed or left a distinguishing mark on any document referencing the TCS. Defendants also contest that they ever executed or completed the second, signature page. Def.'s Reply Br., Steele Certification ¶ 4. As such, the TCS does not satisfy the Statute of Frauds and the forum selection clause therein cannot be enforced against Defendants.

### B.     Improper Venue

Where a case is asserted in an improper venue, 28 U.S.C. § 1406(a) requires a district court to dismiss the case or transfer it if in the interest of justice. *See also* Federal Rule of Civil Procedure 12(b)(3). Cases brought in a proper venue are governed by 28 U.S.C. § 1404(a). When a defendant removes a state action to the federal forum, venue will be proper in the district "embracing the place where such action is pending." *Polizzi v. Cowles Magazines, Inc.*, 345 U.S. 663, 665 (1953); *Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.*, No. 03-4550 (JCL), 2004 WL 1630488 at *2 n.1 (D.N.J. June 30, 2004). Where venue is proper, it is inappropriate for a court to dismiss the case pursuant to 28 U.S.C. § 1406(a). *Salovaara v. Jackson Nat. Life Ins. Co.*, 246 F.3d 289, 298 (3d Cir. 2001). In the instant action, Plaintiff's suit was pending in the Superior Court of New Jersey, Camden County before it was removed to the United States District Court

for the District of New Jersey, Camden Vicinage. Because Defendants timely removed Plaintiff's case from state court to the federal district embracing it, venue is proper here. Accordingly, the controlling transfer of venue statute is 28 U.S.C. § 1404(a), not § 1406(a). The Court cannot dismiss the case under Federal Rule of Civil Procedure 12(b)(3) or 28 U.S.C. § 1406(a), and denies Defendants' Motion to Dismiss.

### III.    MOTION TO TRANSFER

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). In contrast to transfer of venue under 28 U.S.C. § 1406, where the court finds the original venue improper, transfer of venue is done under § 1404(a) "for the convenience of the parties even if the court finds that the original venue is proper." *Ferratex, Inc. v. U.S. Sewer & Drain, Inc.*, 121 F. Supp. 3d 432, 436 (D.N.J. 2015).

The decision whether to transfer an action pursuant to § 1404(a) is within the Court's discretion and is reviewed for abuse of discretion. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 872 (3d Cir. 2013); *Lepre v. Lukus*, 602 F. App'x 864, 868 (3d Cir.), *cert. denied*, 135 S. Ct. 1858 (2015). The party seeking transfer of venue bears the burden of establishing that transfer is warranted and must submit "sufficient information in the record" to facilitate the Court's analysis. *Hoffer v. InfoSpace.com, Inc.*, 102 F. Supp. 2d 556, 572 (D.N.J. 2000). Before transferring venue, the Court must articulate specific reasons for its decision. *Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 451 (D.N.J. 1999).

Under 28 U.S.C. § 1404(a), the court must take into account a wide range of public and private interests when determining if a transfer to a new venue is appropriate. The Third Circuit has identified the following private factors as being significant to the § 1404(a) analysis:

> [1] [P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995) (citations omitted). Among the public factors that courts consider are the following:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

*Id.* at 879–80 (citations omitted).

The movant bears "[t]he burden of establishing the need for transfer," and "the plaintiff's choice of venue should not be lightly disturbed." *Id.* at 879 (quoting 1A Pt. 2 James W. Moore & Brett A. Ringle, Federal Practice ¶ 0.345[5], at 4360). "[U]nless the balance of convenience of the parties is strongly in favor of the defendant, the plaintiff's choice of forum should prevail." *Shutte v. Amco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970) (quoting *Owatonna Mfg. Co. v. Melroe Co.*, 301 F. Supp. 1296, 1307 (D. Minn. 1969)).

### A. Private Factors

The private factors weigh in favor of Plaintiff. As an initial matter, the Court recognizes that a plaintiff's forum choice generally is entitled to deference. *See Jumara*, 55 F.3d at 880. However, when the central dispute in a lawsuit arose from events that occurred almost exclusively in another forum, courts give substantially less weight to the plaintiff's forum choice. *See Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995).

7

Plaintiff's choice of forum is Camden County, New Jersey, while Defendants seek to transfer the case to the Southern District of Florida. The third factor, where the case arose, is neutral. Some relevant events occurred in Florida, such as drafting of the CTA and correspondence between Defendants and the U.S. Army regarding the blanket specifications. However, Plaintiff executed the agreement in New Jersey and corresponded with the blanket supplier and tester from New Jersey. As such, the events giving rise to the case did not predominantly occur inside or outside Plaintiff's choice forum.

The fourth, fifth, and sixth factors—convenience of the parties, convenience of witnesses, and location of books and records—are likewise neutral. Plaintiff is located in New Jersey and Defendants are located in Florida, so neither forum is more convenient on balance. As for witnesses, Plaintiff and Defendants each compiled a list of proposed witnesses, which purports to support locating the matter in their respective fora. The convenience of witnesses factor, however, examines witnesses who may actually be unavailable in one of the fora. *Jumara*, 55 F.3d 879–80. Plaintiff has not alleged that its potential witnesses from the blanket supplier and testing lab would be unavailable for trial in Florida, and Defendants have not asserted that potential witnesses from the U.S. Army would be unavailable for trial in New Jersey. As such, the Court finds this factor to be neutral. As for the sixth consideration, location of books and records, the Court also finds that this factor is neutral. Defendants note that their evidence is physically stored in Florida, but the contract and email correspondences are available digitally and are easily transportable. In summary, the Court finds that the majority of private factors are neutral, with the exception of Plaintiff's forum choice of New Jersey. Thus, the private factors weigh against transfer.

B.     **Public Factors**

The Court finds that the public factors tilt slightly in favor of transfer. The first five factors—enforceability of the judgment, practical considerations that could make trial easy, relative administrative difficulties, local interest in resolving local controversies, and public policy of the fora—do not weigh in favor of either party. The Court sees no reason why a judgment in the case would not be equally enforceable in New Jersey and Florida, even if the prevailing party would have to take administrative steps with the relevant court to achieve enforcement. The practical considerations that make the trial easy, expeditious, or inexpensive are also neutral: the parties are located in different states, and both plan to call witnesses located outside of both fora. With regards to the relative administrative difficulty from court congestion, the Court finds no evidence of greater court congestion in either court, and neither party disputes this factor. Similarly, the Court finds that the preference for resolving local controversies at home to be inconclusive. Florida has a local interest in adjudicating disputes involving contracts drafted, executed, and performed in its state, but New Jersey also has a local interest in resolving disputes over contracts executed and performed in its jurisdiction. The Court sees no evidence to find that the fifth factor, the public policy of the fora, favors either side.

The last factor, the trial judge's familiarity with the applicable state law, supports transfer but only to a slight degree. Under the CTA, Florida law applies to the dispute, and Florida judges have greater familiarity with Florida law. On the other hand, the legal issue to be resolved in this case is straightforward — one of contract interpretation — and Florida, like New Jersey, has adopted the U.C.C. Thus, the Court finds that this factor weighs lightly in favor of transfer.

The movant ultimately bears the burden of showing that the balance of convenience weighs strongly in favor of transfer. Defendants here fail to show that the private factors favor transfer and demonstrate to only a marginal degree that the public factors support transfer. As

9

such, Defendants do not meet the burden required for the Court to grant transfer under 28 U.S.C. § 1404(a), and the Court denies Defendants' Motion to Transfer Venue.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss or Transfer Venue will be **DENIED**. An appropriate order accompanies this opinion.


Dated:   10/6/2016                                              s/ Robert B. Kugler

                                                                                                                                       ROBERT B. KUGLER

                                                                                                                                       United State District Judge